Good afternoon. May it please the court. The county's Women Work the Weekends policy violates Title VII and the Texas Employment Discrimination Act because intentional differential treatment in a term, condition, or privilege of employment is prohibited, and because the policy is an action under this court's precedent. Plaintiffs agree with the United States that this court's adverse employment action doctrine impermissibly narrows Title VII's text and that the when of one's job is a term or condition of that job that cannot be decided based on sex. But in our view, this court's existing precedent nonetheless demonstrates that a complaint alleging an across-the-board sex-based policy requiring women but not men to work weekends states a cognizable Title VII claim. As the county acknowledges in its response to Plaintiff's 28J letter, this court has no categorical rule that discriminatory shift assignments can never constitute adverse employment actions that violate Title VII or Texas law. But it's true that in this court's view, merely changing working hours without more does not constitute an adverse employment action. In other words, when it comes to discriminatory shift assignments, this court requires that there be some sort of plus factor. That is, discrimination plus some additional harm. And the complaint here alleges that plus factor several times over. As in this court's decisions in Forsyth, Click, and Alvarado, and out-of-circuit cases like Threat, the policy prohibiting women from taking consecutive weekend days off treats plaintiffs objectively worse and functions to demote them to junior varsity detention officers. As the court stated in Alvarado, when a job assignment proves objectively worse, such as being less prestigious or less interesting, or providing less room for advancement, the assignment is the equivalent to a demotion and an adverse employment action. In Forsyth, for example, the terms and conditions of the plaintiff's employment were modified to deny them a more prestigious opportunity with better working hours. And part of how the court measured whether the plaintiffs there were treated objectively worse was that few officers had voluntarily transferred from the intelligence unit to night patrol. Here, the complaint alleges that weekend leave is preferred. That's at ROA 14 and Record Excerpts 23. That allegation must be taken as true at this stage with all reasonable inferences drawn in plaintiff's favor. And that weekends are objectively preferred is a common-sense inference. Everyone in this room likely prefers not to work on the weekends because of how the work week is typically structured and how we schedule social and family obligations. But counsel, is that preference, is that enough to affect a term or condition of employment under our precedent? Yes, Your Honor. It's enough because here, the harm is objective. And that's the plus factor required under this court's precedent. But even if that weren't enough- Where's your case that says so? In Forsyth, for example, the plaintiffs were denied an opportunity that had better working hours and that those working hours were objectively preferred. In that case, the few officers had voluntarily transferred from the intelligence unit to the night patrol. And so that's similar here where weekends are objectively preferred. But you're getting to objectively preferred by inference? By inference in that the complaint alleges that weekend leave is preferred. That's at ROA 14 and Record Excerpts 23. But then, of course, it is also a common-sense inference that weekend leave is preferred based on what we all know about taking leave on the weekends. But even if that weren't enough here, the complaint also alleges that seniority benefits were affected. And that makes this case like this court's decision in Click where the plaintiffs lost seniority benefits. And here, absent the discrimination alleged, the plaintiff's schedules are decided based on seniority. That's at ROA 13 through 14 and Record Excerpts 22 through 23. So that means that officers with more seniority have a privilege, as that desired day is off. And here, the complaint alleges that the desired day is off, or weekend day is. And as the Supreme Court made clear in Heshaun, an employment benefit that's a privilege may not be doled out in a discriminatory fashion, even if the employer would be free simply not to provide the benefit at all. That's at page 75 of the opinion. Let me stop you and ask you a question. Does term, quote unquote, objectively worse, as with other cases and, you know, every case turns differently, but . . . so if we're looking at the pleadings, this term, objectively worse for good or ill, has crept its way in. It's not in all our cases at all. But for purposes of the complaint that's before us and what was before the district court, what makes out the, quote, objectively worse? Is that the plus factor you're talking about? Yes, Your Honor. That's the plus factor I'm talking about. But here also, the complaint alleges that plus factor because there's a plausible inference from the complaint as well that the county here seeks to have male officers overseeing female officers' work. And that's because when the sergeant discussed implementing this policy with the plaintiffs, he told them that it was based on sex. And he told them that it would be, quote, unsafe for all men to be off during the week. That's at ROA 14 and Record Excerpts 23. And so presumably, as in the Threed case, which is the Sixth Circuit case referenced in our 28J letter, that has something to do with the composition of the workforce at the detention center. And we take from the sergeant's comment about safety, which is frankly hard to make sense of, that the county is not concerned about shifts comprised only of male officers, but seeks to ensure that there are no shifts of only female officers. I was trying to get my head around some of the rationale because at one point, it looks like safety is mentioned, but I'm not quite sure if I gleaned wholly that safety was the primary thought. And three, there's some discussion by Judge Sutton on the policies there in which some people were moved around in order to look at. So in a nutshell, walk me through this. This hasn't been the policy all along. So suddenly, we get to a point where it is the policy. So what's the stated deal? If you run out of time, I'm going to give you some more time because I want to understand the mechanics of this sort of get to the stop sign, take a left turn, so to speak. If you follow me in terms of rationale, did it start out as safety and then morph to something else? Is it driven primarily by the seniority, which if in the manner of hiring, there might be more males who are more senior because women are hired? Or is it a mixture of all these variables? Do you follow me? Your Honor, at this stage, we must take the allegations in the complaint as true. And the allegations in the complaint are that the sergeant admitted that this policy was sex-based and that the plaintiffs told the sex-based discrimination and that management decided to keep the discriminatory policy in place. And I thought the complaint also alleged that it was based on safety as well. It wasn't just that the sergeant said, well, it's sex-based, period. That's right, Your Honor. The sergeant said that it was based on sex and the sergeant also makes this comment about safety. And of course, the county says in their papers, although it's not alleged in the complaint, that this policy was somehow temporary. And of course, that's an admission that this sex-based policy did exist at some point. And it's a suggestion that it's highly unlikely that this policy had any reasonably necessary to the operation of the detention center because apparently it has since been rescinded. But some of the questions that Judge Stewart, you're getting at are things that would be learned through discovery should this case be remanded. But at this stage, what we know from the complaint is that there's an across-the-board sex-based policy that says women but not men cannot take leave on the weekends. And that's another way in which this case is not a near-shift assignments case. And that's because plaintiffs have pled not that the county made individualized discriminatory changes to plaintiffs' hours, but that the county implemented this across-the-board policy that serves as a badge of inferiority. And as the amicus brief filed by the National Women's Law Center and others points out at page 11, the stigma from being subject to a facially discriminatory scheduling policy impedes plaintiffs' opportunities, including their economic opportunities, because it may deter them from seeking promotions or drive them off the job altogether. And it's relevant to the plus-factor inquiry here that the plaintiffs told the lieutenant and the chief and human resources about this policy. That's at ROA14 Record Excerpts 23. But management, quote, agreed with the discriminatory policy, and the policy remained in place. And that matters here, because it suggests that all of these people within the workplace knew that this policy was in place, and it emphasizes that the policy served as a badge of inferiority here. And ultimately, the county points to no case that involves facts similar to those alleged here. And that makes sense, because more than half a century after Title VII's enactment, it is well-recognized that an employment decision cannot be based on sex. And so this court has not had occasion to state the obvious that an expressly sex-based scheduling policy that favors male employees— What was the argument made to Judge Godbee on a hearing on the motion to dismiss with regard to McDonnell Douglas? The argument is articulated here. What was the argument at the motion-to-dismiss stage? Is that the question, Your Honor? Yes. So the county argued below that the policy was not an adverse employment action, as that term is understood. Did the counsel below argue that McDonnell Douglas was a framework for situations in which there was not a direct evidence of—the plaintiff's case did not rest on direct evidence of discrimination? Your Honor, I don't think that the question of discriminatory intent, which is the question that McDonnell Douglas goes to, was ever at issue here, because— The role of McDonnell Douglas in this case, was that argued to the district judge? No, Your Honor. The only argument made to the district court was about whether this was an adverse employment action, as that phrase is understood by this court. And so there was no question that discriminatory intent was alleged, because, again, the complaint alleges an admission that sex was the basis for this policy. Okay. So the argument, there would be one argument that this case would fit into some new category, which might put us up against the precedent, whatever ultimate employment action means. Another argument would be, and some of that's these cases that are there, and so the ultimate employment action might still be that language, or what is this other one, objectively worse, etc. So, obviously, you know, you're arguing breaking new ground. A panel can't do that. And so, my question is, if that's not the primary argument, if it is fitting it within the platings, fitting it, grooving it in here, not pre, whatever, help me, us, rather, just walk through where it sits in. I mean, I know about Alvarado, got it up here. I know about Pegram. I wrote the opinion. That was a Section 1981 case. I mean, we got cases all over the place. You follow what I'm saying? We got Burlington, Falgraaf, so it's a lot there. And so, on the one hand, you have the issue of what the text of the statute says. And then, on the other hand, you have these different, whether you're talking about lateral transfer, shift changes, women having to contribute more to the seniority fund. So, there's always these different variables. So, it gets tricky comparing cases because you have different features. We know at one extreme, if it's firing, promotions, etc., that's going to be an ultimate employment action. On the other hand, we know, in one of these cases, we have transfer isn't. So, as far as I know, what do we have that fixes this shift change or this other arena that at least gets this case closest or the cases we ought to be looking at, so forth. And I'm well aware of the shade of the light. It's not going to change to a different shade of red. I got it. But the clerk is going to give you two minutes additional time because I took two minutes to ask the question. So, put two minutes on the clock so you can walk through that. And I'm, to the extent needed, you know, the county will have ample time to, you know, to reply. It's an important case. I just want to be clear on where we are. We're going to read the briefs and record, but that's why I saw the audience. Where does this fit in? Do you get the gist of my question? Yes, Your Honor. And I think it fits in with cases like Forsyth, Click, and Alvarado, cases that say that merely changing working hours without more does not constitute an adverse employment action. But here we have the more that's required, the plus factor that we've been talking about. And that's in the form of the objectively worse schedule here because women are invariably denied weekend leave. It's in the form of denying women their seniority benefits, which is a privilege as that word is understood under Title VII. It's in the form of having the female officers essentially supervised by male officers if we infer from the complaint that that's the goal of the policy here. And then it's also in the form of this policy serving as a badge of inferiority. And just to wrap up, the county points to no case that suggests that this court should not start with the text of the statute. Of course, in every statutory construction case, the starting point is the statute's words, and there's no decision of this court or the Supreme Court that says a different rule applies in interpreting Title VII. And so here, when the county implemented this expressly sex-based policy, it changed a term, condition, or privilege of employment. That argument is, this is a one-issue case, and the district court necessarily decided what the phrase adverse employment action means. Well, but if the litigation was over whether there was an adverse employment action, isn't that a different argument than the text and Supreme Court precedent sort of override our own court precedent? I don't think so, Your Honor, because the phrase adverse employment action comes from the phrase terms, conditions, or privileges of employment. I don't think that the plaintiffs were required to use any magic words in their response. But the plaintiffs didn't use any magic words saying that adverse employment action was wrongly defined by the Fifth Circuit. In other words, in the district court, if I read it right, plaintiffs came onto the field as it was set by our precedent. They didn't argue the textual argument that you're making now, did they? Your Honor, the county below argued that— Talking about plaintiffs. Sure, Your Honor. Plaintiffs responded to the county's argument by challenging the county's narrow understanding of the phrase adverse employment action, and they argued that based on plain common sense, the county's discriminatory policy qualified as a prohibited employment practice under Title VII. Is that enough to preserve your textualist argument you're making today? I think it is, Your Honor, because again, it is well understood that in any statutory construction case, we begin with the statute's words. Is there any Supreme Court case that says you can waive a textualist argument? I don't think so, Your Honor. I mean, in Bostock, Justice Gorsuch spends—it's a 107-page opinion, and he goes on and on about the text of the statute, you know, kind of on and on. So, I mean, we get waiver raised a lot, and it is a good argument, but if we're in a textualist world where we start with the statute, can you waive a textualist argument? That's a rhetorical question. It's not one I'm asking you to answer, but it just makes me wonder if you can waive a textualist argument if the complaint is based on a statute, any statute, where you've got to examine the text in order to do it. I'm just wondering if it's waivable, not whether it was raised below, but whether or not . . . it's not on the same plane as jurisdiction, but just like we often get cases where people don't assert jurisdiction, but we always can examine our jurisdiction, and we have to do it. Anyway, it's just sort of, as I start looking at this question, wondering whether one can waive a textualist argument, or even if it isn't raised below, can the court appeal? You know, we have this notion the court can affirm or whatever, for whatever basis the record allows. So, even assuming one can waive it, is it beyond the plenary reach of the court if the court has to decide a case based on the statute? Do you follow me? I think so, Your Honor, and I don't believe that the text of the statute could be forfeited here, especially because the very issue decided by the district court was whether this expressly sex-based policy violated the text of Section 703 of the Act. And if there are . . . I'm taking over your time, and I appreciate it. We all have. So, you've reserved your rebuttal time. Ms. Baldwin from DOJ. Yes, Your Honor. Thank you, and may it please the court. Anna Baldwin, on behalf of the United States Department of Labor. The question presented in this appeal is whether Title VII freely permits employers to enforce a sex-based work scheduling policy under which male employees are allowed to take the entire weekend off, but women are prohibited from doing so. Plaintiffs have argued that their complaint stated a viable Title VII claim under this court's precedence and its test for discriminatory employer actions that make a job objectively worse. The United States sought to prohibit . . . the United States' purpose in participating in this argument today is to respectfully urge the court that if plaintiffs can't prevail under this court's precedent, the panel should encourage the court as a whole to rehear this case en banc. That's so because it cannot be the case that Title VII grants employers blanket permission to tell men because they are men that they don't have to work weekends while telling women because they are women that they do. This conclusion flows directly from the text of 701A3 itself, which prohibits discrimination in the terms, conditions, and privileges of employment. As the court was discussing with counsel for appellants, the Supreme Court has made clear time and again that the starting point of the analysis is the text of the statute itself, and where the statutory terms are undefined, as they are here, and the key one that the court has been discussing this afternoon is terms, conditions, and privileges, the court is to apply the ordinary meaning. So here, where you have a claim that prohibits discrimination on the basis of listed protected characteristics in the terms, conditions, and privileges of employment, it flows directly from the text of the statute itself to say that discrimination, which is differential treatment or worse treatment based on sex, in the terms, conditions, and privileges is going to be actionable because here, when an employee works is certainly a term, condition, or privilege of Title VII are encompassed, he wrote, it is straightforward to say that a shift schedule counts as a term of employment. This court's precedence, you know, and again, the plaintiffs ably argued that it falls under the text of the objectively worse test, but again, as Judge Stewart was observing, objectively worse isn't in the text of the statute at all, and part of the problem that lower courts are facing is that in analyzing these claims, the court has sort of allowed a game of telephone to take over, where courts are saying, is this an adverse employment action, and some of this court's cases define adverse employment action in the context of, say, a First Amendment retaliation claim or a Title VII retaliation claim. None of those cases do have the specific statutory language that says, look to the terms, conditions, and privileges of employment, and that's critical to do so because the terms, conditions, and privileges of employment are not limited to the subset of decisions that this court has shorthanded as ultimate employment decisions, as in hiring, firing, compensation, or promotion. They include things like when the employee works, where they work, their particular job assignments, whether an employee has access to training and like. It includes the entire spectrum of incidents of the employee-employer relationship. So whether it's in this case or another case, it's the position of the United States that the court should return and revisit its atextual restriction of the scope of Section 703a1 claims only to ultimate employment decisions. If there's no further questions, I thank you for your time today. Any questions? All right, thank you. All right, we'll see you from the county. May it please the court. I am Assistant District Attorney Jason Shouette representing the county. The county today is intending to show the court that the issue actually before it, whether or not there was under this court's precedent, a adverse employment action was properly decided by the district court, and the county asked the court to affirm the judgment in favor of the county. I think I'll start with some of the issues that you brought up already with opposing counsel, and that begins, I think, with the issue of was this raised below, and I think that the record is clear. The record is clear that it was not. The county's motion was very straightforward. Was this action that they complain of an adverse employment action under this court's settled precedent? The plaintiffs, the appellants, did not address in any manner any argument having to do with a textual reading of whether the court had erred in its prior decisions on this topic. Acknowledge that we're talking about Title VII, right? I'm sorry, sir. Acknowledge that the complaint is based on Title VII. Indeed. Indeed. Title VII complaint. What of counsel's point that this was a single issue case? I mean, isn't it true that adverse employment action is shorthand for those terms in the text of the statute? Isn't that what the Fifth Circuit said? I don't think that it is, and the reason I don't think that it is, is because if we are to simply say that an issue may be raised on a particular defect in a complaint, and never argue to the why the text requires a different outcome, but to simply join the issue that is raised in the motion, then we're short-circuiting. Well, I mean, we get waivered 99 times out of 100, and I'm going to tell you, the Fifth Circuit grabs waiver by both arms. You waived it, you're out, period, no matter how tempting it may be, and we don't always get it where a suit is based on a statute that we're asked to look at, but we're told we can't look at it because that point's waived. That's more the point. If this was solely did they raise it and all that, we get that, but the point is undeniably we're looking at Title VII, and so let's just put aside for the moment so you don't spend your whole time on whether it would be it's waived, they didn't raise it, but you got a whole lot to argue, so don't spend 20 minutes on it. We're not going to say you conceded anything. You follow me? I do, sir. If we would get you that you would say they didn't raise it, and whatever benefit that is to the county, we got you in the book on that, okay? But just assume arguendo, you know, the statute's there. There's a whole lot of other stuff that you can argue, too. So let me ask you, do I understand that the county acknowledged, for want of a better way to put it, that the policy is discriminatory? No. Okay. No. Part of the problem in this case is that there was an exceedingly brief complaint. As I'm sure the court is aware, the complaint itself, the factual portion, takes up a scant two pages. There's so much, there's so much that is not in the record that underlies what was going on that it's difficult to to speak with the court about why it was not discriminatory. We are in that unhappy situation where a very terse complaint alleges very few facts, and that is what the district court had to go on. But you filed a motion to dismiss, which meant facially that it's meritless. Yes. Yes. Because based on what they had pleaded, it remains the county's position, and this is the core of it. Setting aside waiver entirely, the core of it, Judge Higginbotham, is that this court's precedents, reaching back... Let's talk about that for a moment. You seldom see a situation where a government agency says this was a rule and it's based strictly on sex. And then the only thing left in the case is whether there's some consequence to that. And then the allegation is that cutting along male-female lines works differentially, that this particular form of leave, whatever you call it, or job assignments, are desirable and undesirable for very real reasons, and which they don't make. And hence, they violate that, and that is enough. And McDonnell-Dudman's framework is there for a reason. It addressed, Congress addressed the situation of situations where plaintiffs did not have... had to prove or infer that the particular practice, or whatever, was based on... was indexed by male-female differentiations. Here, you don't have that. You have the county, rightly or wrongly, quite honestly, saying that, well, no, this is what the rule is. Okay, that you plainly are discriminating on the basis of legal... you're treating differently, and that would ask illegal discrimination to the question. And there, we narrowed it very much down to whether there's some objectable consequence to that. And the plaintiffs, the argument on its face is that they have that. And that was never addressed at all, and that's what troubled me about it, is that this is, on its face, a very unusual case. It doesn't come... it doesn't... it opened wide doors to anything, but I seldom see them. I've only been at this 45 years here, but I don't think I'm familiar with everybody coming and saying, well, yeah, that's what we did, and it's... but it's perfectly legal, and it does have consequences as a matter of common sense. They... Well, if I may, I think part of the problem is that the county's position is being miscast. The county looked at the complaint and filed a motion to dismiss on a very narrow, targeted point of law that, in this circuit, the change in shift was not a adverse employment action, as this court's precedents, going back 20 years... The argument is that that adverse employment action Congress provided was a technique to address the situation of insufficient evidence itself. That's what the McDonnell-Douglas framework is calculated to address, is the want of it. So now we have this very unusual situation where the McDonnell framework is not relied upon, doesn't need to be relied upon, because the defendant, quite candidly, and everybody says, no, this is what the practice is, legal or not, this is what we need to do, and they did. And so now the question is, what do we do with that? Well, again, respectfully, Judge, the county's position is not that we shift changes made to accommodate other interests which were not in the pleadings. That's the problem here. Well, again, the problem here is that the complaint is very narrowly defined, and the county did not elect to file an answer where it might explain more background. The county filed a motion targeted to the legal issue of whether or not the shift change under the court's precedence constituted what this court has defined as something actionable under Title VII. Well, if the complaint is filed and, you know, we have to construe the facts and the like, you know, most favorable to the complaint, albeit the other side, then what you're saying is you start off saying, well, there's a lot that's not in the complaint, there's these other things, she says, the sergeant says this, and so on and so forth, none of that's in the complaint. So our always trouble is while we're dealing with a 12B dismissal as opposed to, you know, this fleshing out further down the road, you might win on a summary judgment to show it's really not an objectively worse situation, it's really beneficial, it has this, it's that, but that's fleshed out, you know, to where the points you're making are there. So the difficulty for us is when we get it tossed up, it's on a complaint, you say a few words, and so we're getting it here, but, you know, we're having to make a decision about just what's in the complaint when both of you seemingly have a whole lot more to say about the real world aspects of how this plays out. Do you follow what I'm saying? I think so. Although I don't quarrel with first in, file the motion to dismiss, I get that, but it just seems like it's begging for more to flesh out or not. Why shouldn't we send this back to the district court and let's say that you can take some discovery of whatever you want to do and develop a factual record and argue the case? Because, Your Honor, this court's precedents, and this is where I really want to go today, this court's precedents are very clear that the shift change complained of, even if it is undesirable, even if— But you see, assume for the moment that it's just not quite as clear as you would understandably push for, that we're in a very uncertain territory here, and a very able district judge has not been able to even address this, and we just say go back down there and develop the case and then get it done. I think the answer is because, again— I'm trying to answer an abstract question. That's why we have the good trial courts. That said, before we stop again, go ahead and make your declared statement fully uninterrupted so you won't come all the way and never get to say what you want to say, but we'll stop again. Go ahead and be displeasantly, hit the points you want to make, then we may come back. Thank you. The appellants talk about the plus, and I think it is critical in looking at the prior cases to see that there was a much different plus in those cases. If the court looks at Alvarado versus Texas Rangers, you had a situation where you clearly had a very coveted different position. It was somebody who had a transfer to the Texas Rangers. If the court looks at the case of Foresight versus City of Dallas, and that is where you had transfers from the intelligence unit to essentially night patrol, which the officers in question had 20 years before, there was obviously a difference there, a transfer from the intelligence unit to really another job entirely. Let me ask you this, since you said that, Alvarado is a summary judgment case? Yes. Absolutely, it's a summary judgment case, but the point is that you can't just say that these cases are like Alvarado's. I get that, but I'm coming back to, I'm hearing what you're saying full force, but you just made, about the point made, and my own pushback is to say, you're right. It does say what you see, but it was on a motion for summary judgment. It wasn't on a 12B. I guess my question is, does that make a difference at all? I think that it doesn't, and the reason why, Judge Stewart, is because this court's precedents firmly stand for the proposition that a shift change, as undesirable as it may be, where there is no change in compensation, where there is no change in benefits, where there is no hiring or demotion, where there's none of that going on, is simply not actionable. But counsel, what about, and I'm sorry to interrupt, but we've got a lot of questions I guess today, but what about where they allege that this is a policy across the board? I mean, isn't that the plus factor? Where is our precedent that says, not just a one-off shift assignment, not just scheduling issue, but a policy across the board, women don't get to take the weekends off, period. Men do. I mean, at the 12B6 stage, is that the plus? I mean, how does that just go out as a matter of law that it's not an adverse employment action? Well, because I think, Judge Wilson, that we have, the court has defined, this court has defined what is and is not an adverse employment action. But let me ask you . . . Before, before . . . Sorry. I'm going to take senior approvals. But in Alvarado, the court says denial of a purely lateral transfer is not an adverse employment action. Then it says denial of promotion is. What's my point? My point is, it was in the summary judgment context when the court said what wasn't and what was. But you're wanting us to take in a 12B6 what we've said isn't. Yes, we've said those things, but we haven't said them in a motion to dismiss judgment. That's one of our big concerns is process, not necessarily who wins or loses. So let's don't get it twisted, as they say. You follow me? It's just that it's presented to us in a 12B6 context. You say we win because y'all have said X. But before the court in Alvarado ruled, it had never gotten the lateral transfer question. So each of these cases presents a different scenario. And if they just came in on 12B and said King's X, we win. Your court has said X, but we had never opined on lateral transfer. That's the thing. It's over time, these different categories in the employment setting. So we're ultimately left, is it term privilege of employment? We start with the statute. So I'm just saying to you, other than just accepting that you're right, you win. But how do we discern that what we have said doesn't fit within the terms and conditions of employment? Fleshed out in the way that you've articulated to it, that in reality, it's not really objectively worse or whatever the other points. Unless you're arguing that it's not, I guess, an ultimate employment action. But I think you were arguing more than no adverse than you were not an ultimate employment action, right? Because I understand this court's precedents. An adverse employment action must be an ultimate employment decision. I understand them to be one and the same. Well, when we've said ultimate, we've talked about firing, terminating people, et cetera, et cetera, et cetera. Maybe that's how some of the language has changed to adverse. Because ultimate, at that time, kind of meant you're out, no promotion, whatever, whatever. So when you get to adverse, doesn't mean you're out the door. So the nomenclature, and that's why I said it's objectively worse. You're going back in our earlier cases, there's nothing in there that talks about objectively worse. It's just kind of crept in. Into the landscape. But let me get you, I'm just trying to be on the cases you've cited and even some they've cited. I've been looking for a 12B. You know, there's some regions where the parties have had a chance to flesh out the points made here. So what's your best 12B case? Let me put it like that. What's your best 12B case where we tossed it and said affirmed King's X? I don't think I have a 12B case of the kind that you're describing, sir. Okay. Candor with the court is appreciated every day, all day. Well, it is what it is. Yeah. Got it. Okay. It doesn't necessarily mean you lose, but you know, that's what we're hunting for. You know, we're trying to just make sure we're dealing with the same, you know, dynamics. I got you. And if I may, I think that what I'd say to the court is that procedurally are they in different places? Obviously. 12B-6 is different than summary judgment, but it doesn't change the lessons that the summary judgment cases teach us about what is and isn't an actionable event. Is this a direct evidence case or circumstantial in the county's position? As to what facets, sir? Well, is there direct evidence of discrimination? In the very superficial sense that... Well, in the very superficial sense is what's alleged in the complaint, so... Yes. As alleged in the complaint, yes. It's a direct case. So is adverse employment action an element of a direct case? I'm just trying to lay some ground rules, I guess, to figure out where our precedent reaches and where it doesn't. I think under your precedent, it has to be. It has to be. Adverse employment action is what this circuit has said is required to be pleaded and a trial to be shown. And that's, I think, my overarching point is that they have not pleaded that the shift change that they complain of, the even denial based on seniority... So let me phrase it this way. It's not a shift change so much as it is we are allocating shifts based on gender. And by the way, one gender gets less desirable shifts than the other gender does. I mean, that's a fair reading of the complaint, is it not? It is. It is a very fair reading. How is that not an adverse employment action? Because this court has said that a shift change, even if it's undesirable... Not a shift change, setting shifts based on gender. Well, I think I'm having trouble discerning the legal distinction that matters between them. If a shift change, for whatever reason, is not an adverse employment action, then it really doesn't matter whether or not it was done for a discriminatory purpose. It either is or it isn't actionable under Title VII. And this court's precedents say that even an undesirable shift change is not actionable. Even in retaliation cases, it was held not to be. That's changed, of course, with some of the subsequent case law or retaliation and so on. Point is, it either is or isn't an adverse action. And if it is not, it doesn't matter how they get there. It just isn't actionable. Madam Court, did you give him the extra two minutes to start with? Okay. You gave him his plus two, for want of a better way to put it. You asked me for my best case. And you did it in the context of 12 v. 6. And I think that the court should look at Hernandez v. Sikorsky Support Services cited in the brief. There, the court, I think, talked about exactly the things I'm talking about here, that you have to show some objective loss in compensation duties or benefits, that the shift change is just not actionable. It is a per curiam case. I think that the court, when looking at Sikorsky, of course, also looked at Hunt, where you had a registered nurse who was given a Popson's choice between a night shift and a part-time day shift. She didn't want. Can I stop you? Yes, sir. I knew you were going there, so I got you. Okay. Here's Hernandez. We review a district court's grant of summary judgment. Do you know, though? Yes, I concede. These are summary judgment cases. Well, counsel, just on the basic pleadings propositions, the court, why don't the court conclude what seems to be obvious, that we're not prepared to say that on the fact that it's pleaded, but it's claimed statement of differentiation on the basis of sex, that there's no bottom line. We're not trying to put a guts guess of what that is or how that fits within these other various ranges. Bottom line is that our pleading structures contemplate the type of difficulty we're in, and which counsel that you go back and you develop the record. What are the situations, et cetera, et cetera, and the district judge listens to that, make a summary judgment or whatever you need to do. In other words, you don't get an answer here. One way or the other, it would just put you back in a different place so that we get to a point that we get an answer that is meaningful and not an evanescent one that goes away with the next pleading level. The case is too consequential. They all are consequential, but this has got large implications. A little bit more of our largest encounters in one of the greatest cities in Dallas. Judge Higginbotham, all I can say is that these cases, as they're read, many of them, after a full evidentiary development on summary judgment, do go through the analysis, and so many of them end up in the same place. Yes, there's this fact, and there's this fact, and there's this fact, but when they get all done with it, what the court ends up saying is that factual particularities aside, this action is not an adverse employment action, and therefore, we're going to affirm the judgment below. We're not saying that that couldn't happen here. We're not trying to take a position on who wins or loses. We're trying to posit it within. You're both relying on our precedent. Okay, so what do we do? All of us, we've been reading the precedent, the very thing you can. Like I said, we're trying to compare it. If we're looking at, yeah, the court said that, but it said under Rule 56, where the plaintiff can't rest on just the pleading. It's doing it against, but you got to come forward with something. It's not enough just to get to the holding in the case, but you got to look at the path to get there. It's after the court says you had your shot at it. So it's tricky to get us to want to be where you want to be in a 12B context, but citing holdings to us from either a Rule 56 or something fully tracked. Yes, the answer is at the end, but that's the path. It's the process piece that's troublesome, but though we cut you off, part of the reason for argument is to get the questions answered, so we have a better handle on what's at issue. We're not antagonistic at all to the position. Please know we haven't . . . you haven't conceded anything that you are, because the brief is really the key to the case, and we haven't, and you've said it there, but we just wanted to get through. That said, would you like to make any final point to leave us with? Uh, respectfully, sir, I think we probably covered this, at least as well as I'm able to cover it for you. I don't really have anything except to say that the county asked the court to affirm the judgment below. All right. Thank you, sir. We do appreciate all your help in the brief and otherwise, so . . . Thank you. I appreciate the court's indulgence. All right. Thank you. All right, Mr. Smith, I've not seen many people can do much with two minutes, but that's all you have. If this court accepts the county's argument . . . Keep in mind, you know, there's an old football adage, you don't put the ball in the air when you're leading. Thank you for that reminder, Your Honor. If the court accepts the county's argument, the county, which is already comfortable with using sex to make employment decisions, will be further emboldened. The gist of the county's argument, after all, is that it's free to hang a sign in the workplace reinstating the very policy at issue here with all of its resulting harms. And if the county can engage in this discrimination without legal consequence, then what is to stop employers from requiring people of certain religions to wear distinguishing patches on their clothing or that people of certain races enter the premises only through particular entrances? This is the discrimination that is within the heartland of what Title VII was designed to protect against, and nothing in this court's precedent requires holding otherwise. Well, let me just part with this, you know, you've heard our questions, you know, about 12B and so on and so forth, and counsel opposite says, you know, it's a, it's a, you know, it's a struggle. We had a case last week, well, no, I think it's in one of these VAX cases where the complaint was 350 paragraphs, and those are 12B. So the point is, sometimes in these motions to dismiss, we get an opposition to the motion to dismiss, but the party will say, but if not, then we won't leave to amend. And so my question is, as this was framed down below, was it just frontally frayed on, or did at any point, plaintiff asked, you know, in the face of, they say, hey, you're out because it's adverse, well, was the judge asked to amend or invest? That's just an information question. Your Honor, the only argument that was made below by the county was that there was no adverse employment action. I mean on the plaintiff side, I'm talking about on the plaintiff. That's right, Your Honor. And so there was no Twombly or Iqbal argument here. There's no argument that the facts alleged are insufficient. The argument is only about whether the facts alleged are sufficient to allege an adverse employment action. I think Judge Stewart's question was, were, did plaintiffs ask for leave to amend? They did. The district court gave them 30 days to amend, and they did not, right? That's right, Your Honor, because we believe that the facts alleged here are sufficient under this court's existing precedent to make out an adverse employment action. And to the extent that the panel disagrees, then we preserve our argument that Title VII, that the adverse employment action doctrine impermissibly narrows Title VII's text. And we would seek further review on that point if the panel disagrees with us that the facts alleged here make out an adverse employment action under the court's existing precedent. Thank you for your time. All right. Thank you. Thank you to all of you, Ms. Baldwin and all counsel, for the briefing and argument of the case. It's helpful. Before . . .